UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
ANGEL HERNANDEZ,                                             :
                                                             :
                              Plaintiff,                     :    14-CV-192 (JPO)
                                                             :
              -v-                                            :    OPINION AND ORDER
                                                             :
THE CITY OF NEW YORK, *et al.*,                              :
                                                             :
                              Defendants.                    :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Angel Hernandez filed this action on January 2, 2014, proceeding *pro se*, alleging that Defendant Corizone Medical Department Staff delivered substandard medical treatment while he was incarcerated at Rikers Island. (Dkt. No. 2.) This Court granted a motion to dismiss the initial complaint and also gave Hernandez leave to amend. *Hernandez v. Corizone Med. Dep't Staff*, No. 14 Civ. 192, 2015 WL 273690, at *4 (S.D.N.Y. Jan. 22, 2015).

      Thereafter, Hernandez obtained pro bono counsel (Dkt. No. 53), and filed the operative Sixth Amended Complaint ("Complaint"), alleging deliberate indifference to his medical condition, under 42 U.S.C. § 1983, against the City of New York, the New York City Health Department, Correction Officer Captain Isaac, Correction Officer Adun, and other corrections personnel at Rikers Island, named in the Complaint as Doe Defendants (Dkt. No. 69 ¶¶ 70-77 ("Compl.")). Hernandez also alleges that all Defendants, except for the New York City Health Department, were negligent under state law and caused him injury. (*Id.* ¶¶ 78-86.)

      Defendants move to dismiss the Complaint. (Dkt. No. 79.) For the reasons that follow, the motion is granted in part and denied in part.

1

I.  **Background**

Some familiarity with the facts of this case is presumed; the contours of the events are chronicled in this Court's earlier Opinion and Order on the first motion to dismiss. *See Hernandez*, 2015 WL 273690, at *1. The following facts are taking from the operative Sixth Amended Complaint and are presumed true for the purposes of this motion.

As relevant to the pending motion to dismiss, Hernandez alleges that Rikers Island staff manually regulated and maintained the temperature of the water in the inmate showers in the 1 Lower South ("1LS") building at the Robert N. Davoren Complex at Rikers. (Compl. ¶¶ 12-14.) The temperature could not be controlled by inmates and was adjusted only by accessing the locked boiler room, which was staffed by authorized personnel. (*Id.* ¶ 13)  On October 16, 2013, the staff on duty left the water in the showers in 1LS at a "scalding temperature." (*Id.* ¶ 14.) When Hernandez turned on the shower, the shower head "broke off from the faucet," and a large volume of "scalding hot" water cascaded over him, causing "severe skin burns" on his head, back, and legs. (*Id.* ¶ 15.)

On or around October 18, 2013, Hernandez's burns had not healed, and blisters erupted on his back and right leg. (*Id.* ¶ 17.)  He informed Defendant Correction Officer ("CO") Adun of the injuries and the "excruciating pain" they caused; he asked that Adun help him get medical care. (*Id.*)  That same day, CO Adun told his superior, CO Captain Isaac, what Hernandez had reported to him, including that Hernandez had blisters on his back and right leg and was experiencing tremendous, excruciating pain. (*Id.* ¶ 18.)  Hernandez further alleges that Adun and Isaac were personally in charge of his custody and care—and, based on this first exchange, that they were aware of this medical condition from start to finish. (*Id.* ¶¶ 6-8.)

After his initial report to CO Adun, Hernandez was examined by a physician's assistant ("PA") at a New York City Correctional Health Services office located at Rikers. (*Id.* ¶ 19.) He was diagnosed with "contact dermatitis due to hot water," and the PA documented multiple pus blisters and other irritation, including a visible rash. (*Id.* ¶ 20.) Hernandez was given an ointment to spread over the affected areas and told to take ibuprofen for pain. (*Id.*)

Two days later, Hernandez returned to the same medical facility because of worsening discomfort—the "severe pain" made lying in bed too painful for him to sleep. (*Id.* ¶ 21.) The PA noted that Hernandez had developed "scaly erythematous patches on his back," and that the blisters and rash caused by the scalding water had begun to spread to other parts of his body. (*Id.*) The PA also noted that Hernandez's skin had become pruritic, which could be an indication of infection or skin disease. (*Id.*) On the basis of Hernandez's severe and worsening condition, and at Hernandez's request, the PA issued a referral for an examination and treatment by a dermatologist through Bellevue Hospital. (*Id.* ¶ 23.)

In spite of Hernandez's worsening medical condition and the referral to Bellevue, the authorities in charge of Hernandez's custody refused to make arrangements for him to receive appropriate dermatological care. (*Id.* ¶ 25.) A month later, around November 22, 2013, he was brought to a dermatology clinic onsite at Rikers, where a PA again reviewed his case and documented a worsening condition, including the further spread of blisters and rash, additional signs of infection, and the outbreak of lesions. (*Id.* ¶ 26.) The PA diagnosed Hernandez with a skin infection called "lichen planus v. gultata psoriasis" and ordered that he have a follow-up visit within six weeks. (*Id.* ¶ 29.) But the follow-up did not occur. (*Id.* ¶ 43.)

On November 28, 2013, Angel called a physician to explain that his condition was worsening. (*Id.* ¶ 30.) The doctor concluded that the treatments were not working and that

3

Hernandez's condition was indeed deteriorating. (*Id.* ¶ 31.) Hernandez's blisters and "scales" grew and began "secreting blood and pus." (*Id.* ¶ 32.) He filed a grievance with the New York City Health Department in December, describing his substandard medical treatment. (*Id.* ¶ 34.) He also filed a New York City Department of Correction Inmate Grievance and Request Program Statement Form, in which he begged for medication to help him "get better." (*Id.* ¶¶ 36-37.) In response, the New York City Department of Correction issued an Inmate Grievance and Request Program Disposition Form, acknowledging that Hernandez "need[ed] treatment" and directing its provision. (*Id.* ¶¶ 38-39.) However, no action was taken. (*Id.* ¶ 40.) At the end of the December, 2013, Hernandez filed a second "Inmate Grievance." (*Id.* ¶¶ 41-42.) Then, in January, Hernandez penned a letter to the warden about the situation; the letter was never answered. (*Id.* ¶¶ 43-44.)

After Hernandez submitted another request to see a dermatologist, a physician onsite at Rikers issued a referral for evaluation, examination, and treatment. (*Id.* ¶¶ 46-47.) Around the same time, the New York City Health Department also issued a dermatology referral. (*Id.* ¶ 48.) Still, nothing happened. (*Id.* ¶ 49.)

It was not until January 17, 2014, that Hernandez was brought in for a dermatology review. (*Id.* ¶ 50.) And at the end of January, Bellevue Dermatology was, at last, able to review photographs of Hernandez's skin condition—albeit remotely—and recommended that he be transported for further evaluation in several weeks at the latest. (*Id.* ¶¶ 51-52, 55.) But, again, no one approved or arranged for this visit. (*Id.* ¶ 56.)

In February, Hernandez filed another health grievance form (*id.* ¶ 58), and got another referral (*id.* ¶¶ 60, 65). But, still, he was not transported—instead, Hernandez was sent back to the clinic at Rikers. (*Id.* ¶ 59.)

4

It was only on the last day of March, 2014, that Hernandez was transported offsite to see a dermatologist at Bellevue. The dermatologist observed extensive scarring caused by the condition and told Hernandez it was too late to properly treat his condition. (*Id.* ¶ 68.)

## II. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).

## III. Discussion

Based on the facts described above, Hernandez alleges negligence as against the staff who maintain and control the water temperature in the showers (including John and Jane Does, CO Adun, CO Captain Isaac, and the City of New York),[1] and deliberate indifference to a serious medical condition by CO Adun and CO Captain Isaac, who, Hernandez alleges, were in

---

[1] Though Hernandez purports to allege negligence as to all Defendants, he does not reference the New York City Health Department in that cause of action. (Compl. ¶¶ 78-86.) As a result, the Court interprets the negligence claim as against named Defendants Adun and Isaac, the Doe Defendants, and the City of New York.

5

charge of his custody and care.[2] He also alleges Section 1983 municipal liability by the City and its Health Department for failing to arrange for an offsite examination and treatment. (Compl. ¶¶ 70-86.)

The Court first discusses the deliberate indifference claim under Section 1983, as against individual Defendants, and then as against the City and its Health Department. It then turns to the negligence claim.

### A. Deliberate Indifference

#### 1. Individual Defendants

A deliberate indifference claim comprises two elements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Betts v. Rodriquez*, No. 15 Civ. 3836, 2016 WL 7192088, at *4 (S.D.N.Y. Dec. 12, 2016) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)). This, in turn, involves two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Id.* (quoting *Salahuddin*, 467 F.3d at 279). "Second, the objective test asks whether the inadequacy in medical care is sufficiently serious"—that is, whether "a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Id.* (internal quotation marks omitted) (quoting *Salahuddin*, 467 F.3d at 280).

The second requirement of a deliberate indifference claim is subjective: "the charged official must act with a sufficiently culpable state of mind." *Id.* (quoting *Salahuddin*, 467 at

---

[2] Though the Complaint purports to allege deliberate indifference as against all Defendants, there is no reference to the Doe Defendants in the description of that cause of action. (Compl. ¶¶ 70-77.) Accordingly, the Court interprets the deliberate indifference claim as only against the specifically named Defendants, Adun and Isaac, together with the City and its Health Department.

6

280). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (quoting *Salahuddin*, 467 at 280). "Such 'awareness may be proven from the very fact that the risk was obvious.'" *Id.* (internal quotation marks omitted) (quoting *Spavone v. N.Y.S. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)).

Defendants first argue that Hernandez has not met the objective element of the deliberate indifference analysis. Specifically, as to the first inquiry of the objective prong, they argue that the operative Complaint merely alleges that Hernandez was "delayed access to a medical specialist," and not that he was deprived adequate medical care. (Dkt. No. 80 at 7-8.) They point to the fact that Hernandez received *some* medical attention onsite at Rikers throughout the period of his ailment. (*Id.* at 8.)

While it is true that Hernandez did see PAs at Rikers, it is also the case that—as described in the Complaint and with all reasonable inferences drawn in Hernandez's favor—this care fell short of that recommended by those same medical professionals. Specifically, despite repeated referrals to offsite specialists, it took half a year for Hernandez to be treated according to the plan prescribed by Rikers onsite medical staff. (Compl. ¶¶ 20-23, 29, 43, 46-47, 51-52, 56-57.) And even where some medical care is provided, a claim for deliberate indifference may nonetheless be asserted where that care is deficient. *See Rembert v. Cheverko*, No. 12 Civ. 9196, 2014 WL 3384629, at *9 (S.D.N.Y. July 10, 2014). The Court is further mindful that "[w]hether a delay in medical treatment reaches the level of a constitutional violation is 'highly fact-sensitive.'" *Simmons v. Pedroza*, No. 10 Civ. 821, 2011 WL 814551, at *2 (S.D.N.Y. Mar. 7, 2011) (quoting *Davidson v. Harris*, 960 F. Supp. 644, 648 (W.D.N.Y. 1997)). In view of this

7

directive, Hernandez has pleaded enough as to the inadequacy of the care he received and the unreasonableness of the delay to survive at this stage.

As to the second inquiry of the objective prong, the Complaint further alleges that Hernandez's condition was sufficiently serious by all the relevant metrics. Hernandez alleges not only that a reasonable doctor "would find" the condition "important and worthy of comment," but also that PAs and physicians with whom he consulted actually urged and recommended additional care and repeatedly remarked that the current course of treatment was insufficient. (Compl. ¶¶ 20, 26, 29, 31-32, 38, 46-47, 51-52.) *See Salahuddin*, 467 F.3d at 280. He also alleges that the condition "significantly affect[ed]" his "daily activities." *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Specifically, Hernandez alleges that the blisters and rashes made it painful to lie down and nearly impossible to sleep (Compl. ¶ 21), and that they caused "chronic and substantial," *Salahuddin*, 467 F.3d at 280 (quoting *Chance*, 143 F.3d at 702), even "excruciating" pain (Compl. ¶¶ 17-18).

In discussing the objective element of Hernandez's deliberate difference claim in its earlier Opinion and Order dismissing the original complaint in this case, the Court made clear that Hernandez had to do more than merely allege "that his condition did not improve despite the treatment he received from doctors at Rikers Island." *Hernandez*, 2015 WL 273690, at *3. Hernandez has dutifully amended his pleadings so as describe a series of medical recommendations evincing a condition that posed "a substantial risk of serious harm." *Id.* (quoting *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)).

Defendants also challenge Hernandez's pleading as to the second, subjective element of the deliberate indifference analysis. Specifically, Defendants argue that the Complaint describes a mere "difference of opinion between an inmate and prison officials regarding the appropriate

course of medical treatment." (Dkt. No. 80 at 9.) To that end, they point to cases suggesting that a delay in a referral to a specialist, specifically a dermatologist, does not constitute deliberate indifference. (*Id.* (citing *Bryant v. Wright*, No. 09 Civ. 2456, 2010 WL 3629443, at \*9 (S.D.N.Y. Aug. 31, 2010)).)

But the case relied on by Defendants makes clear that a constitutional violation was not found because "the timing of the referral d[id] not reflect that the defendants harmed [the plaintiff] through any delay." *Bryant*, 2010 WL 3629443, at \*9. Here, in contrast, Hernandez alleges that that timing of the referral caused him irreversible harm: The physician he ultimately saw at Bellevue concluded that it was too late to properly treat his condition. (Compl. ¶ 68.) Causing Hernandez to wait for prolonged periods before receiving recommended medical treatment, therefore, can—according to the facts alleged here—be understood as entailing deliberate indifference on the part of CO Adun and CO Captain Isaac to a "substantial risk of serious harm." *Chance*, 143 F.3d at 703.

Defendants further contend that Hernandez does not make out "conscious disregard" as to the individuals named in the Complaint. (Dkt. No. 80 at 10.) Hernandez alleges that he told CO Adun of his condition and the "excruciating pain," and that Adun, in turn, told CO Captain Isaac. (Compl. ¶¶ 17-18.) He also alleges that these COs were responsible for his custody and care from start to finish, and—as demonstrated by the months-long failure to heed recommendations and referrals from multiple medical personnel—failed to take appropriate action to get Hernandez the medical help he required, despite knowledge of the risk to his health. (*Id.* ¶¶ 6-8.)

What is more, "the severity of Plaintiff's apparently visible injuries," including rash and bleeding, oozing blisters, can support an inference of deliberate indifference at this early stage of litigation. *Betts*, 2016 WL 7192088, at \*5; *see Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.

9

2013) ("Evidence that a risk was 'obvious . . . ' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003))). And "failure to act" in the face of a "substantial risk of serious harm" to the plaintiff satisfies the subjective component of a deliberate indifference claim. *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 703). While further factual development may reveal more detail about the knowledge and involvement—or lack thereof—of Defendants Adun and Isaac, at this stage, the Court is obligated to read the Complaint liberally and, as such, finds that Hernandez has alleged enough about their knowledge and subsequent inaction to meet the subjective requirement.

As a result, the Court finds that Hernandez has adequately pleaded deliberate indifference as to CO Adun and CO Captain Isaac.

### 2. Municipal Liability

Defendants also challenge the basis for Hernandez's claim of municipal liability for deliberate indifference.

"[M]unicipalities cannot be held liable pursuant to § 1983 on a respondeat superior theory." *Betts v. Shearman*, No. 12 Civ. 3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Thus, "to hold a city [or city agency] liable under 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead . . . three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of N.Y.* 490 F.3d 189, 195 (2d Cir. 2009) (quotations and citation omitted). In order to make out such a claim, a plaintiff "must allege facts tending to support . . . an inference that such a municipal policy or custom exists." *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Here, however, Hernandez makes merely "conclusory" allegations that the refusal to send him for offsite treatment "was motivated, at least in part, by a desire . . . to avoid incurring the costs involved in transport[ation]." (Compl. ¶ 76.) This bare statement is insufficient to allege a municipal policy sufficient to sustain a claim against the City of New York or its Health Department. *See Santos*, 846 F. Supp. 2d at 576.

Hernandez's contention that his several written grievances put the City on notice as to what was transpiring with his care is not enough to allege a custom or policy maintained by the municipality as to the provision of care generally, without alleging more facts as to a widespread or "persistent" practice or any specifics as to the authority of the recipient of these grievance forms. *Boonmalert v. City of N.Y.*, No. 16 Civ. 4171, 2017 WL 1378274, at *7 (S.D.N.Y. Apr. 12, 2017).

And the Court declines to extrapolate from a United States Justice Department report, cited for the first time in Hernandez's opposition papers to this motion, that the City of New York has any policy or custom that directly bears on Hernandez's injuries and allegedly substandard care. (Dkt. No. 87 at 14-15.)

As a result, Hernandez's claims against the City of New York and its Health Department must be dismissed for failure to state a claim.

### B. Negligence

Hernandez also alleges state-law negligence on the part of CO Adun, CO Captain Isaac, Defendant Does, and the City of New York, stemming from their responsibility to maintain and regulate the water temperature in the shower. It was, after all, the shower's scalding water—over which Rikers staff have exclusive control—that caused Hernandez's burns in the first instance. (Compl. ¶¶ 12-15.)

11

Defendants argue that the Court should dismiss these claims not because they are improperly pleaded, but because the Court should dismiss the constitutional claims and subsequently decline to exercise supplemental jurisdiction over the New York state law claims. (Dkt. No. 80 at 12.) But this argument is unavailing, as the Court has kept alive Hernandez's Section 1983 claims against Defendants Adun and Isaac.

Perhaps Defendants do not contest that Hernandez states a negligence claim because it is plain from the Complaint that he has done so. The three elements of a negligence claim under New York law are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 215 (2d Cir. 2002).

Here, Defendants in charge of operating and maintaining the showers and regulating the temperature of the water owed Hernandez a duty; they allegedly breached that duty in their failure to regulate the temperature; and that failure caused Hernandez's severe burns. (Compl. ¶¶ 12-15.) The negligence claim therefore survives.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The motion is granted as to the claim of municipal liability under Section 1983 against the City of New York and its Health Department; it is denied as to the Section 1983 claim against Correction Officer Adun and Correction Officer Captain Isaac. The motion is also denied as to the negligence claim against Defendants Adun, Isaac, John and/or Jane Doe(s), and the City of New York.

Remaining Defendants shall file an answer to the remaining claims on or before June 16, 2017.

The Clerk of Court is directed to close the motion at Docket Number 79.

SO ORDERED.

Dated: May 22, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge